```
 1              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF OHIO
 2                    EASTERN DIVISION

 3   UNITED STATES OF AMERICA,      Case No. 1:94-cr-0068
                                    Cleveland, Ohio
 4            Plaintiff,            Friday, May 27, 1994

 5        vs.

 6   NAJEH OTTALLAH,
     MAHMOUD OTTALLAH,
 7   MUSA, INC.,

 8              Defendants.

 9                  TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE JOHN M. MANOS,
10                UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   For the Government:      Gregory C. Sasse,
                              Assistant United States Attorney
13                            801 West Superior Avenue
                              400 U.S. Court House
14                            Cleveland, Ohio    44113
                              216-622-3600
15
     For the Defendants       Roger M. Synenberg
16   Najeh Ottallah           Law Office of Roger Synenberg
     Musa, Inc.               Ste. 1200
17                            55 Public Square
                              Cleveland, OH 44113
18                            216-622-2727

19   For the Defendant        William L. Summers
                              Summers Scott
20                            Ste. 200
                              5910 Landerbrook Drive
21                            Cleveland, OH 44124
                              216-696-0727
22
     Official Court Reporter:  Heidi Blueskye Geizer, RMR-CRR
23                             United States District Court
                               801 West Superior Avenue
24                             Cleveland, Ohio    44113
                               216-357-7092
25   Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription.
```

1          THE CLERK:  Your Honor, the case before the

2     Court this morning is United States of America versus Najeh

3     Ottallah and Mahmoud Ottallah.

4          Would you please come forward?

5               THE COURT:  Who is Najeh?

6               NAJEH OTTALLAH:  Yes, sir.

7               THE COURT:  You are Mahmoud Ottallah?

8               MAHMOUD OTTALLAH:  (Nodding.)

9               THE COURT:  You appear before me by way of

10    information, as does the corporation of which you are the

11    president.

12         First, Najeh Ottallah, have you been advised of the

13    nature of the charges in the proposed information and of

14    your rights?  Do you hereby waive in open court today

15    prosecution by indictment and consent and agree that these

16    proceedings may go forward by information rather than by

17    indictment?

18               NAJEH OTTALLAH:  Yes.

19               THE COURT:  Is this your signature?

20               NAJEH OTTALLAH:  Yes.

21               MR. SYNENBERG:  Yes -- no, that's Mr. Summers'

22    signature on there.

23               THE COURT:  Pardon?

24               MR. SYNENBERG:  I was asked if that was my

25    signature on that waiver, Your Honor.

1          THE COURT:  All I am interested in is whether

2    it is his signature, not yours.

3          You are the president of Musa, Incorporated?

4          NAJEH OTTALLAH:  Yes, Your Honor.

5          THE COURT:  And you are authorized to appear

6    here today --

7          NAJEH OTTALLAH:  Yes.

8          THE COURT:  -- on behalf of Musa?

9          NAJEH OTTALLAH:  Yes.

10          THE COURT:  Is this your signature on behalf

11   of Musa?

12          NAJEH OTTALLAH:  Yes, it is.

13          THE COURT:  Mahmoud Ottallah, having been

14   advised of the nature of the charges in the proposed

15   information and of your rights, do you hereby waive in open

16   court prosecution by indictment, and consent and agree that

17   the proceedings may be by information as opposed to by

18   indictment?

19          MAHMOUD OTTALLAH:  Yes.

20          THE COURT:  Is this your signature?

21          MAHMOUD OTTALLAH:  Yes, it is.

22          THE COURT:  Mr. Najeh Ottallah, Mr. Mahmoud

23   Ottallah, and on behalf of Musa, Incorporated, have you

24   received a copy of the information?

25          MAHMOUD OTTALLAH:  Yes.

1          NAJEH OTTALLAH:  Yes.

2          THE COURT:  Have you read it.

3          MAHMOUD OTTALLAH:  Yes.

4          NAJEH OTTALLAH:  Yes.

5          THE COURT:  Do you waive a reading of it,

6  Mr. Synenberg?

7          MR. SYNENBERG:  Yes, Your Honor.

8          THE COURT:  Mr. Summers?

9          MR. SUMMERS:  Yes, Your Honor.

10     May I?  I am appearing here instead -- I know it may

11  be confusing, Mr. Martin Welsh's wife of almost 60 years is

12  gravely ill, and she took ill in Florida where they were

13  over the winter.  He is pretty much retired.  He had been

14  involved in this case from the very beginning.  He is

15  counsel of record, and his name is affixed to the plea

16  agreement.

17     He tried very hard to be here.  They are going to life

18  flight her, whatever, air ambulance her on Sunday from the

19  Cleveland Clinic in Ft. Lauderdale to Cleveland Clinic here,

20  if she makes it that long.  It is pretty sad.  They have

21  been married for 25 years.

22     But I am standing here, and he assures the Court he

23  will be here on behalf of the corporation at the time of

24  sentencing.

25          THE COURT:  All right.  I will have no problem

1    with that.

2                    MR. SUMMERS:  Thank you, Your Honor.

3                    THE COURT:  It is my understanding that

4    Mr. Najeh Ottallah has expressed an intent to enter a plea

5    of guilty to Counts 1, 2, and 3?

6                    NAJEH OTTALLAH:  Yes.

7                    MR. SYNENBERG:  Yes, sir, that's correct.

8                    THE COURT:  And that Mr. Mahmoud Ottallah to

9    Counts 1, and 4 through 7.

10                   MR. SUMMERS:  That's correct, Your Honor.

11                   THE COURT:  Is that so?

12                   MAHMOUD OTTALLAH:  Yes, sir.

13                   THE COURT:  And Musa, Incorporated is in Count

14   1?

15                   MR. SASSE:  1,2, and 3, Your Honor.

16                   THE COURT:  2 and 3?

17                   MR. SUMMERS:  Yes, Your Honor.

18                   THE COURT:  Now, do each of you, and on behalf

19   of the corporation, do you understand you are entitled to a

20   trial by jury?

21                   NAJEH OTTALLAH:  Yes.

22                   MAHMOUD OTTALLAH:  Yes.

23                   THE COURT:  Do you understand you may waive

24   your right to a trial by jury and be tried by this Court?

25   Do you understand that?

1          NAJEH OTTALLAH:   Yes.

2          MAHMOUD OTTALLAH:  Yes.

3          THE COURT:  Respond when I put the question to

4    you.  Do you understand me?

5          MAHMOUD OTTALLAH:  Yes, sir.

6          THE COURT:  If we go to trial you don't have

7    to take the stand to testify against yourself.  Do you know

8    that?

9          MAHMOUD OTTALLAH:  Yes.

10          NAJEH OTTALLAH:  Yes.

11          THE COURT:  If we go to trial there is a

12   compulsory process by which witnesses may be summoned to

13   testify on your behalf.  Do you understand that?

14          NAJEH OTTALLAH:   Yes, sir.

15          MAHMOUD OTTALLAH:  Yes.

16          THE COURT:  Sir, if you enter a plea of guilty

17   you waive your right to a trial by jury.  Do you know that?

18          NAJEH OTTALLAH:  Yes.

19          THE COURT:  Now, if you enter a plea of

20   guilty, the maximum sentence the Court may impose as to each

21   of these counts is five years in jail, up to five years in

22   jail, a fine of up to $250,000, up to three years supervised

23   release, and a $50 special assessment pursuant to statute as

24   to each count.

25        Do you understand that?

1          NAJEH OTTALLAH:  Yes, sir.

2               THE COURT:  Is there a plea agreement?

3               MR. SASSE:  Yes, Your Honor, there is.

4               THE COURT:  Would you just in summary spread

5    it on the record?

6               MR. SASSE:  Yes, Your Honor.

7               THE COURT:  In summary now.  I am sure that

8    you have gone over it, Mr. Summers and Mr. Synenberg.

9               MR. SYNENBERG:  Yes, Your Honor, we have.

10              MR. SUMMERS:  Yes, Your Honor.

11              MR. SASSE:  With regard to defendant Najeh

12   Ottallah, in exchange for the guilty pleas that have been

13   just recounted, both parties are recommending that the

14   applicable guideline is 2F1.1; that the loss to the

15   government is $3,200,000; that the defendant will be given

16   three points for acceptance of responsibility; that there is

17   a two-level enhancement for leadership; that there is a

18   two-level increase for more than one victim of the scheme;

19   and that the defendant will cooperate with the government

20   and receive up to four levels pursuant to such cooperation,

21   and that he will not be charged with additional crimes, and

22   that if he cooperates the low end will be recommended by the

23   government.

24        With regard to defendant Mahmoud Ottallah, he will

25   plead guilty as just recounted.  Again, we are recommending

1    the same Guideline Section 2F1.1; the same loss calculation.

2    We are again recommending that he receive three levels for

3    acceptance of responsibility; he will receive two levels for

4    more than one victim; and we are agreeing to a two-level

5    decrease for minor role for him.

6         And, again, he is going to cooperate with the

7    government and will receive up to one level, and if he

8    cooperates the government will recommend the low end of the

9    guidelines, and he will not be charged with additional

10   counts.

11        With regard to the corporation Musa, it will plead as

12   just recounted.  And again, we are recommending the same

13   Guideline Section 2F1.1, the same loss figure; a 2-level

14   increase for more than one victim, and a sentence within the

15   guidelines.  And for all of the defendants, restitution is

16   left open to the Court.

17             THE COURT:  Is this your understanding of the

18   agreement?

19             MR. SUMMERS:  Yes, Your Honor.

20             MR. SYNENBERG:  Yes, Your Honor, that is the

21   principal thrust of the agreement.

22             THE COURT:  Mr. Najeh Ottallah and Mr. Mahmoud

23   Ottallah, having heard the agreement but independent of it,

24   has anybody threatened you in any way or promised you

25   anything to enter a plea of guilty to the counts I have

1    previously articulated?

2                    MAHMOUD OTTALLAH:  No, Your Honor.

3                    NAJEH OTTALLAH:  No.

4                    THE COURT:  On behalf of the corporation, is

5    your answer the same?  "No"?

6                    NAJEH OTTALLAH:  Yes.

7                    THE COURT:  First, Mr. Najeh Ottallah, this is

8    an information.  And Mr. Sasse --

9                    MR. SASSE:  Yes, Your Honor.

10                    THE COURT:  Are you listening to me?

11                    MR. SASSE:  Yes, Your Honor.

12                    THE COURT:  In the introduction you have the

13    word indictment, and it is information.

14                    MR. SASSE:  That's correct, Your Honor.  That

15    is an error.

16                    THE COURT:  It is, and it is not permissible

17    that a U.S. Attorney make such errors; is it, Mr. Synenberg,

18    Mr. Summers?

19                    MR. SYNENBERG:  Well, yes, Your Honor.

20                    THE COURT:  You want to take issue with that,

21    don't you?

22                    MR. SYNENBERG:  We would ask -- we would not

23    object to an amendment.

24                    THE COURT:  If they correct it.

25                    MR. SYNENBERG:  Yes, sir.

1           MR. SUMMERS:  So agree, Your Honor.

2           MR. SASSE:  Thank you, Your Honor.

3           THE COURT:  Now, the U.S. Attorney charges at

4     all times in this information -- listen carefully -- food

5     stamp coupons are deemed to be obligations of the United

6     States.  Now, you owned a grocery store, Musa, Incorporated,

7     doing business under the name of Quality Eagle Supermarket,

8     and located at 8502 Quincy Avenue, in Cleveland, Ohio.

9           Did you from at least as early as January 1, 1988 and

10    continuing at least until December 5, 1991, the exact dates

11    being unknown, in the Northern District of Ohio, Eastern

12    Division, you, Najeh Ottallah, and as to Count 1, you,

13    Mahmoud Ottallah, and as to the corporation Musa,

14    Incorporated, and other individuals and grocery stores both

15    known and unknown, did willfully and knowingly combine,

16    conspire, confederate, and agreed with each other and with

17    others known and unknown to commit offenses against the

18    United States, that is to violate Title VII, Sections

19    2024(b) and (c) of the United States Code, i.e.,

20    unauthorized receipt, possession, and redemption of food

21    stamps; Title 18, Section 4641 of the United States Code, to

22    convey and dispose of obligations of the United States

23    without authority; and Title 18, Section 1001 of the United

24    States Code, i.e., false statements in a matter within the

25    jurisdiction of a department of the United States; and Title

1    18, Section 287 of the United States Code, making false

2    claims upon a department of the United States.

3         You, Najeh Ottallah, and you, Mahmoud Ottallah, and

4    the corporation, Musa, Incorporated, of which you are the

5    president and its authorized executive, continuously

6    accepted, possessed, used, and redeemed United States

7    Department of Agriculture food stamps and Special

8    Supplemental Food Program for Women, Infants, and Children

9    coupons of the value of approximately $3,200,000, knowing

10   the same to have been received in violation of Food Stamp

11   Program regulations, in that they had not been received from

12   the purchase of eligible grocery items.

13        It was part of the conspiracy and in furtherance of,

14   and to affect the objectives of this conspiracy, you and

15   coconspirators did perform, among others, the following

16   overt acts:

17        You, Najeh Ottallah, on or about January 8, 1986, did

18   complete an application as president of Musa, Incorporated

19   on behalf of Musa, Incorporated, doing business as Eagle

20   Supermarket, to participate in the Food Stamp Program.

21        Two, on or about August 1, 1990, Hani Hamidan, an

22   employee of Muse, Incorporated, doing business as Quincy

23   Eagle Supermarket, purchased United States Department of

24   Agriculture food stamps for cash from an undercover law

25   enforcement officer.

1   On or about September 5, 1990, Hani Hamidan and you,

2 Mahmoud Ottallah, employees of Musa, Incorporated, doing

3 business as Quincy Eagle Supermarket, purchased United

4 States Department of Agriculture food stamps for cash from

5 an undercover law enforcement officer.

6   Four, on or about September 8, 1990, you, Mahmoud

7 Ottallah, an employee of Musa, Incorporated, doing business

8 as Quincy Eagle Supermarket, purchased United States

9 Department of Agriculture food stamps for cash from an

10 undercover law enforcement officer.

11   Five, on or about November 7, 1990, you, Najeh

12 Ottallah, an employee of Musa, Incorporated and its

13 president, doing business as Quincy Eagle Supermarket,

14 purchased United States Department of Agriculture food

15 stamps for cash from an undercover law enforcement officer.

16   Six, on or about February 4, 1991, Hani Hamidan and

17 you, Mahmoud Ottallah, employees of Musa, Incorporated,

18 doing business as Quincy Eagle Supermarket, purchased United

19 States Department of Agriculture food stamps for cash from

20 an undercover law enforcement officer.

21   Seven, on or about June 4, 1991, you, Najeh Ottallah,

22 an employee of Musa, Incorporated, doing business as Quincy

23 Eagle Supermarket, purchased United States Department of

24 Agriculture food stamps for cash from an undercover law

25 enforcement officer.

1    Eight, on or about June 4, 1991, Hani Hamidan advised

2    an undercover law enforcement officer that he and Quincy

3    Eagle Supermarket were interested in purchasing $6,000 worth

4    of food stamps.

5    Nine, on or about December 2, 1991, you, Najeh

6    Ottallah, an employee of Musa, Incorporated, doing business

7    as Quincy Eagle Supermarket, purchased United States

8    Department of Agriculture food stamps for cash from an

9    undercover law enforcement officer.

10    Ten, on or about December 5, 1991, you, Najeh

11    Ottallah, an employee of Musa, Incorporated, doing business

12    as Quincy Eagle Supermarket, purchased United States

13    Department of Agriculture food stamps for cash from an

14    undercover law enforcement officer.

15    Eleven, on or about December 5, 1991, Quincy Eagle

16    Supermarket possessed Special Supplemental Food Program For

17    Women and Infants and Children coupons of the value of

18    approximately $12,500, knowing the same to have been

19    received in violation of Food Stamp Program regulations, in

20    that they had not been properly completed at the time of

21    negotiation as is required by law.

22    Between January 6, 1989, and December 14, 1991,

23    Mahmoud Ottallah prepared more than 140 food stamp

24    redemption certificates which certified Quincy Eagle

25    Supermarket's compliance with the regulations of the Food

1    Stamp Program, forging Najeh Ottallah's signature.

2          Thirteen, between January 1, 1988 and December 14,

3    1991, you, Najeh Ottallah, prepared several hundred food

4    stamp redemption certificates which certified Quincy Eagle

5    Superior Market's compliance with the regulations of the

6    Food Stamp Program, all in violation of Title 18, Section

7    371 of the United States Code.

8          First, Najeh Ottallah, did you commit the offense

9    charged in Count 1.

10                    NAJEH OTTALLAH:  Yes, Your Honor.

11                    THE COURT:  What is your plea?

12                    NAJEH OTTALLAH:  Guilty.

13                    THE COURT:  The court will make the finding

14    that he committed the offense charged in Count 1 and will

15    accept his plea of guilty, and make the finding that it is

16    knowingly and voluntarily entered.

17          Mr. Mahmoud Ottallah, did you commit the offense

18    charged in Count 1 of the indictment?

19                    MAHMOUD OTTALLAH:  Yes.

20                    THE COURT:  What is your plea?

21                    MAHMOUD OTTALLAH:  Guilty.

22                    THE COURT:  The Court will make the finding

23    that this defendant committed the offense in Count 1 and

24    will accept his plea of guilty, and make the finding that it

25    is knowingly and voluntarily entered.

1          Now, Mr. Najeh Ottallah, directing my remarks to you

2     personally and then to you as the person authorized to

3     appear here before this Court on behalf of Musa,

4     Incorporated, did you, and on behalf of the corporation, on

5     or about the 2nd day of May, 1990, in the Northern District

6     of Ohio, Eastern Division, you then being the president of

7     Musa, Incorporated, doing business under the name Quincy

8     Eagle Supermarket, a corporation with its principal place of

9     business in Cleveland, Ohio, did willfully attempt to evade

10    and defeat a large part of the income tax due and owing by

11    said corporation to the United States of America for the

12    calendar year 1988 by preparing and causing to be prepared,

13    and by signing and causing to be signed, a false and

14    fraudulent U.S. corporation income tax return Form 1120,

15    which was filed with the Internal Revenue Service on behalf

16    of the corporation, wherein it was reported that the taxable

17    income of the corporation for said calendar year was

18    $79,317, and that the total amount of tax due and owing was

19    $15,218, whereas, as the defendant and you then well knew

20    and believed, the taxable income of the corporation for

21    calendar year was approximately $129,317, upon which said

22    income tax said there was owing to the United States of

23    America a total tax of approximately $33,684, in violation

24    of Title 26, 7201, of the United States Code.

25          Did you commit the offense charged in Count 2?

1          NAJEH OTTALLAH:  Yes, Your Honor.

2          THE COURT:  The Court will make the finding he

3    committed the offense charged in Count 2.  What is your

4    plea?

5          THE DEFENDANT:  Guilty.

6          THE COURT:  The Court will accept this

7    defendant's plea of guilty and make the finding it is

8    knowingly and voluntarily entered.

9        Count 3, directing my remarks to you personally and to

10   you as the officer representing the corporation.

11       Did you and the corporation on or about the 24th day

12   of September, 1990, in the Northern District of Ohio,

13   Eastern Division, you, who were then president of Musa,

14   Incorporated, doing business under the name Quincy Eagle

15   Supermarket, a corporation with its principal place of

16   business in Cleveland, Ohio, did willfully attempt to evade

17   and defeat a large part of the income tax due and owing by

18   said corporation to the United States of America for the

19   calendar year 1989.

20       This is the same as Count 2, the preamble is.  I will

21   go directly to the amounts involved.  Would that be

22   acceptable to you, Mr. Synenberg?

23          MR. SYNENBERG:  Yes, sir, that's fine.

24          THE COURT:  And to you, Mr. Sasse?

25          MR. SASSE:  Yes, Your Honor.

1          THE COURT:  All right.

2          It was reported that the taxable income for that year

3     for said corporation was $66,857 and that the total amount

4     of tax due and owing was $11,714, whereas as the defendants

5     then and there well knew and believed, the taxable income of

6     said corporation for said calendar year was approximately

7     $116,857, upon which said income there was owing to the

8     United States of America a total tax of approximately

9     $28,824.

10          Did you and the corporation commit the offense charged

11    in Count 2?

12               NAJEH OTTALLAH:  Yes, Your Honor.

13               THE COURT:  The Court will make the finding

14    the offense was committed by the defendants.  What is your

15    plea?

16               NAJEH OTTALLAH:  Guilty.

17               THE COURT:  On behalf of both?

18               NAJEH OTTALLAH:  Yes, sir.

19               THE COURT:  The Court will accept his plea of

20    guilty on his behalf and on behalf of the corporation, and

21    make the finding that it is knowingly and voluntarily

22    entered.

23          Now, going to Count 4.  I will deal with the preamble

24    here and then as to the remaining counts, we'll just go to

25    the amounts involved.

1           MR. SASSE:  Fine, Your Honor.

2           THE COURT:  Is that acceptable, Mr. Summers?

3           MR. SUMMERS:  Yes, Your Honor.

4           THE COURT:  Mr. Sasse?

5           MR. SASSE:  Yes, Your Honor, it is.

6           THE COURT:  Mr. Mahmoud, sir, did you on or

7    about -- Count 4 -- the 19th day of September of 1988, in

8    the Northern District of Ohio, Eastern Division, you who

9    were president of Sahar, Incorporated, doing business under

10   the name Lee Road Supermarket, a corporation with its

11   principal place of business in Cleveland, Ohio, did

12   willfully attempt to evade and defeat a large part of the

13   income tax due and owing by the corporation to the United

14   States of America for the calendar year 1987, by preparing

15   and causing to be prepared and by signing and causing to be

16   signed a false and fraudulent U.S. corporation income tax

17   return Form 1120, which was filed with the Internal Revenue

18   Service on behalf of this corporation, wherein it was

19   reported that the taxable income of said corporation for

20   said calendar year was $6,975 and that the total amount of

21   tax due and owing thereon was $1,046, whereas as the

22   defendant then and there well knew and believed, the taxable

23   income of said corporation for said calendar year was

24   approximately $46,975, upon which said income there was

25   owing to the United States of America a total tax of

1    approximately $7,373, in violation of Title 26, Section

2    7201, of the United States Code.

3         Did you commit the offense charged in Count 4?

4              MAHMOUD OTTALLAH:  Yes.

5              THE COURT:  The Court will make the finding he

6    committed the offense charged in Count 4.  What is your

7    plea?

8              MAHMOUD OTTALLAH:  Guilty.

9              THE COURT:  The Court will make the finding

10   that his guilty plea is knowingly and voluntarily entered.

11        Count 5.  Going down to -- the preamble is the same,

12   the filing of the Form 1120, reported that the taxable

13   income of said corporation for said calendar year was

14   $13,954 and that the total amount of tax due and owing

15   thereon was $2,093, whereas, as defendant then and there

16   well knew and believed, the taxable income of the

17   corporation for that calendar year was approximately

18   $63,954, upon which said income there was owing to the

19   United States of America a total of approximately $10,989,

20   in violation of Title 26, Section 7201, of the United States

21   Code.

22        Did you commit the offense charged in Count 5?

23              MAHMOUD OTTALLAH:  Yes.

24              THE COURT:  The Court will make the finding

25   that he committed the offense charged in Count 5.  What is

1    your plea, sir?

2                    MAHMOUD OTTALLAH:  Guilty.

3                    THE COURT:  The Court will accept his plea of

4    guilty to Count 5 and make the finding that it is knowingly

5    and voluntarily entered.

6         Then going to Count 6 and to the corporation, the same

7    preamble, returned Form 1120 which was filed with the

8    Internal Revenue Service on behalf of the corporation,

9    reported that the taxable income of the corporation for said

10   calendar year was $27,180 and that the total amount of tax

11   due and owing was $4,077, whereas defendant then and there

12   well knew and believed the taxable income of the corporation

13   for said calendar year was approximately $77,180 and a total

14   tax was approximately $14,491; in violation of Title 26,

15   section 7201, of the United States Code.

16        Did you commit the offense charged in Count 6?

17                   MAHMOUD OTTALLAH:  Yes, sir.

18                   THE COURT:  The Court will make the finding

19   that he committed the act charged in Count 6.

20        What is your plea?

21                   MAHMOUD OTTALLAH:  Guilty.

22                   THE COURT:  And the Court will accept this

23   defendant's plea of guilty and make the finding it is

24   knowingly and voluntarily entered.

25        Count 7, the same preamble, returned corporate tax

1  return Form 1120 filed with the Internal Revenue Service on

2  behalf of the corporation, reported that the taxable income

3  of the corporation for that calendar year -- and this is

4  1991, June 1991 -- was $43,384 and that the total amount of

5  tax due and owing was $6,508, whereas in fact that the

6  taxable income for that calendar year was approximately

7  $108,384, and the amount of tax that was owed was $25,520,

8  in violation of Title 26, Section 7201, of the United States

9  Code.

10       Did you commit the offense charged in Count 7?

11            MAHMOUD OTTALLAH:  Yes.

12            THE COURT:  The Court will make the finding

13  that you committed the offense charged in Count 7.

14       What is your plea, sir?

15            MAHMOUD OTTALLAH:  Guilty.

16            THE COURT:  The Court will accept this

17  defendant's plea of guilty and make the finding that it is

18  knowingly and voluntarily entered.

19       We will refer this to the probation department for

20  presentence reports.

21       I understand Mahmoud Ottallah is in custody on a state

22  charge.

23            MR. SUMMERS:  Correct, Your Honor.

24            THE COURT:  Bond for Mr. Najeh Ottallah?

25            MR. SASSE:  We would concur with Pretrial

1    Services and recommend $10,000 unsecured.

2              THE COURT:  He can stay out on $10,000

3    unsecured bond.

4        Anything further?

5              MR. SASSE:  No, Your Honor.

6              MR. SUMMERS:  No, Your Honor.

7              THE COURT:  We are in recess.

8                     -  -  -  -  -

9

10

11              C E R T I F I C A T E

12

13        I certify that the foregoing is a correct transcript

14    from the record of proceedings in the above-entitled matter.

15

16         s/Heidi Blueskye Geizer        May 24, 2013

17         Heidi Blueskye Geizer, RMR-CRR        Date

18

19

20

21

22

23

24

25